**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JARRELL CURNE,<br>[DOB: 02/25/1989]<br><br>Defendant. | Case No. ______________________________<br><br><u>COUNTS ONE and TWO:</u><br>18 U.S.C. § 1343<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br><u>COUNT THREE THROUGH THIRTY</u>:<br>18 U.S.C. § 1956(a)(1)(B)(i)<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br><u>ALLEGATION OF CRIMINAL FORFEITURE</u><br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(1)<br>28 U.S.C. § 2461<br><br>$100 Mandatory Special Assessment Each Count |

# INDICTMENT

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment.

## Introduction

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

2. As a part of the CARES Act, the Paycheck Protection Program (PPP) was created to provide forgivable loans to small businesses that were administered by the Small Business Administration (SBA) through corresponding financial institutions. The purpose of PPP was to provide support to small businesses and assist their payroll to their employees during the coronavirus pandemic.

3. In order to obtain a PPP loan, a business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications regarding its eligibility.

4. In the application, the small business's authorized representative was required to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. In addition, the businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

5. PPP loan proceeds were required to be used by the business for certain permissible expenses - payroll costs, interest on mortgages, rent, and utilities. To obtain a PPP loan, the small business's authorized representative was required to certify that the loan funds would be used for those expenses.

6. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the Small Business Administration if the business spent the loan proceeds on these permissible items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

7. To gain access to funds through the PPP, small businesses applied through financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

8. Participating financial institutions required applicants for PPP loans to provide truthful information, including truthful information about the business's ownership, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

9. US Bank, located in Minneapolis, Minnesota, was a financial institution participating in the PPP and its deposits were insured by the Federal Deposit Insurance Corporation.

10. Defendant JARRELL CURNE was a resident of Grandview, Missouri.

11. Hustle Ova Everything Entertainment, LLC (Hustle), was a Missouri corporation with an address of 14919 Pine View Drive, Grandview, Missouri. The registered agent for the corporation was Jarrell DeAndre Curne.

12. Defendant JARRELL CURNE maintained a bank account in the name of Hustle Ova Everything Entertainment, LLC, at BBVA, located in Birmingham, Alabama, account number XXX 2943.

## COUNTS ONE AND TWO

The Grand Jury further charges:

13. The allegations in paragraphs 1 through 12 of this indictment are incorporated as if fully set forth herein.

### The Scheme to Defraud

14. From in or around April 2020, to approximately September 17, 2021, in the Western District of Missouri and elsewhere, the defendant JARRELL CURNE, participated in the scheme and artifice to defraud the US Bank and the Small Business Administration (SBA), and to obtain moneys, funds, credits, and other property owned by and under the custody and control of those institutions, by means of false and fraudulent pretenses, representations and promises, while knowing that the pretenses, representations and promises were false and fraudulent.

15. It was part of the scheme and artifice to defraud that defendant JARRELL CURNE submitted a fraudulent PPP loan application for Hustle in the amount of $312,500.

16. On or about May 13, 2020, defendant JARRELL CURNE submitted a fraudulent PPP loan application to US Bank in the name of Hustle Ova Everything Entertainment, LLC, requesting a loan in the amount of $312,500. The loan application had the following false statements:

a. The application stated that Hustle was an operating business with an average monthly payroll in 2019 of $125,000 or $1,500,00 per year. The application stated that in 2019 Hustle had 100 employees. In fact, in 2019, Hustle did not have any reported employees or payroll;

b. Defendant CURNE submitted false documents in support of the application, including:

i. 2019 Form 941, Employer's Quarterly Federal Tax Return for Hustle stating payments to 100 employees in 2019;

ii. 2019 Form 940, Employer's Annual Federal Unemployment Tax Return for Hustle which stated payments to all employees of $1,500,000.

All of these documents were false and fraudulent and not filed with the Internal Revenue Service (IRS).

17. It was further part of the scheme and artifice to defraud that, as a result of the fraudulent PPP loan applications, a BBVA bank account under the control of defendant JARRELL CURNE received a total of $312,500. Specifically:

a. On May 15, 2020, US Bank wire transferred $312,500 to BBVA account XXX 2943, in the name of Hustle Ova Everything Entertainment, LLC.

18. On or about the following dates, in the Western District of Missouri and elsewhere, the defendant JARRELL CURNE, having devised and intending to devise the aforementioned scheme and artifice to defraud the SBA and US Bank, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce, wire and radio sounds, and signals, that is, electronic wire transmissions of PPP loan documents and wire transfers of funds, each of which constitutes the execution of the fraudulent scheme and a separate count of this indictment:

| **Count** | **Date** | **Act** |
|---|---|---|
| 1 | 05/13/2020 | Fraudulent PPP loan application submitted to US Bank on behalf of Hustle Ova Everything Entertainment, LLC. |
| 2 | 05/15/2020 | Wire of $312,500 PPP funds from US Bank to BBVA. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE THROUGH THIRTY
(Money Laundering)

19. Paragraphs 1 through 18 are hereby realleged, as if fully set forth herein.

20. On July 8, 2019, defendant CURNE purchased a 2016 S550 Mercedes for $56,888. Mercedes Benz Financial Services (MBFS) financed $57,886 of the sale amount.

21. On July 20, 2019, defendant CURNE purchased a 2019 Dodge Challenger for $71,132. Santander Consumer USA Inc. d/b/a Chrysler Capital financed $71,140.75 of the sale amount.

22. Using the Hustle PPP loan funds, defendant CURNE made payments to persons as "wages." Thereafter, these persons made payments on the two auto loans on behalf of CURNE. The following are examples of these transactions:

a. On May 15, 2020, defendant CURNE made a transfer of $3,846.15 from the Hustle bank account to AD. On May 18, 2020, defendant CURNE made three transfers of $3,846.15 from the Hustle bank account to AD ($11,538.45). On May 21, 2020, AD made a $5,000 payment on defendant CURNE's Chrysler Capital loan. On May 22, 2020, AD made a $8,000 payment to Chrysler Capital on defendant CURNE's auto loan.

b. On May 18, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to CK. On May 22, 2020, CK made a $6,500 payment to MBFS on defendant CURNE's auto loan. On May 26, 2020, CK made a $6,275 payment to MBFS on defendant CURNE's auto loan.

c. On May 18, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to TD. On May 22, 2020, TD made a $13,000 payment to MBFS on defendant CURNE's auto loan.

d. On May 18, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to BSC. On May 21, 2020, BSC purchased five $1,000 money orders payable to MBFS. On May 23, 2020, BSC purchased five $1,000 money orders payable to MBFS. These money orders were received by MBFS and credited to defendant CURNE's loan balance.

e. On May 19, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to SC. On May 21, 2020, SA made a $14,000 payment to MBFS on defendant CURNE's auto loan.

f. On May 19, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to SA. On May 20, 2020, SA made two payments on defendant CURNE's auto loans. SA transferred $5,300 from her account to Chrysler Capital. SA transferred $8,602.63 from her account to MBFS.

g. On May 21, 2020, defendant CURNE made four transfers of $3,846.15 ($15,384.60) from the Hustle bank account to JJ. On May 24, 2020, JJ purchased three $1,000 money orders payable to Chrysler Capital. On May 26, 2020, JJ purchased another four $1,000 money orders payable to Chrysler Capital. These money orders were received by Chrysler Capital and credited to defendant CURNE's loan balance. On May 26, 2020, JJ made an additional $7,000 payment to Chrysler Capital on defendant CURNE's auto loan.

23. On or about the dates listed below, in the Western District of Missouri, defendant JARRELL CURNE did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, wire transfer of money, which involved the proceeds of a specified unlawful activity, that is wire fraud, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| **Count** | **Date** | **Recipient** | **Amount** | **From** | **To** |
|---|---|---|---|---|---|
| 3 | 05/15/2020 | AD | $3,846.15 | BBVA Compass | Scientific Research Partners Credit Union |
| 4 | 05/18/2020 | AD | $3,846.15 | BBVA Compass | Scientific Research Partners Credit Union |
| 5 | 05/18/2020 | AD | $3,846.15 | BBVA Compass | Scientific Research Partners Credit Union |
| 6 | 05/18/2020 | AD | $3,846.15 | BBVA Compass | Scientific Research Partners Credit Union |
| 7 | 05/18/2020 | CK | $3,846.15 | BBVA Compass | Northland Teachers Community Credit Union |
| 8 | 05/18/2020 | CK | $3,846.15 | BBVA Compass | Northland Teachers Community Credit Union |
| 9 | 05/18/2020 | CK | $3,846.15 | BBVA Compass | Northland Teachers Community Credit Union |
| 10 | 05/18/2020 | CK | $3,846.15 | BBVA Compass | Northland Teachers Community Credit Union |
| 11 | 05/18/2020 | TD | $3,846.15 | BBVA Compass | Baxter Credit Union |
| 12 | 05/18/2020 | TD | $3,846.15 | BBVA Compass | Baxter Credit Union |
| 13 | 05/18/2020 | TD | $3,846.15 | BBVA Compass | Baxter Credit Union |
| 14 | 05/18/2020 | TD | $3,846.15 | BBVA Compass | Baxter Credit Union |
| 15 | 05/18/2020 | BSC | $3,846.15 | BBVA Compass | Bancorp Bank |

| | | | | | |
|---|---|---|---|---|---|
| 16 | 05/18/2020 | BSC | $3,846.15 | BBVA Compass | Bancorp Bank |
| 17 | 05/18/2020 | BSC | $3,846.15 | BBVA Compass | Bancorp Bank |
| 18 | 05/18/2020 | BSC | $3,846.15 | BBVA Compass | Bancorp Bank |
| 19 | 05/19/2020 | SC | $3,846.15 | BBVA Compass | Simple |
| 20 | 05/19/2020 | SC | $3,846.15 | BBVA Compass | Simple |
| 21 | 05/19/2020 | SC | $3,846.15 | BBVA Compass | Simple |
| 22 | 05/19/2020 | SC | $3,846.15 | BBVA Compass | Simple |
| 23 | 05/19/2020 | SA | $3,846.15 | BBVA Compass | Bank of America |
| 24 | 05/19/2020 | SA | $3,846.15 | BBVA Compass | Bank of America |
| 25 | 05/19/2020 | SA | $3,846.15 | BBVA Compass | Bank of America |
| 26 | 05/19/2020 | SA | $3,846.15 | BBVA Compass | Bank of America |
| 27 | 05/21/2020 | JJ | $3,846.15 | BBVA Compass | Wells Fargo Bank |
| 28 | 05/21/2020 | JJ | $3,846.15 | BBVA Compass | Wells Fargo Bank |
| 29 | 05/21/2020 | JJ | $3,846.15 | BBVA Compass | Wells Fargo Bank |
| 30 | 05/21/2020 | JJ | $3,846.15 | BBVA Compass | Wells Fargo Bank |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## FORFEITURE ALLEGATION

(a) The allegations of Counts One and Two of this indictment are hereby repeated and re- alleged as if fully set forth herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461.

(b) Upon conviction of any of the offenses listed in Counts One and Two of this indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); including but not limited to a money judgment in the amount of at least $312,500 representing proceeds traceable to the offenses.

(c) Upon conviction of any of the offense listed in Counts 3 through 30 of this indictment, the defendant shall forfeit to the United States any property, real or personal, involved in these offenses or any property traceable to each property, pursuant to Title 18, United States Code, Section 982(a)(1); including but not limited to a money judgment representing proceeds traceable to the offense.

(d) If any property described in the above paragraph, as a result of any act or omission of the defendant -

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred to, sold to, or deposited with a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; and/or;

(5) has been commingled with other property that cannot be subdivided without difficulty.

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant.

A TRUE BILL.

09/06/2023
DATE

*/s/ James Chamberlain*
FOREPERSON OF THE GRAND JURY

*/s/ Paul Becker*
Paul S. Becker
Assistant United States Attorney
Western District of Missouri